■ The People of the State of New York, Respondent, v Ronnie L. Moore, Appellant.—Yesawich, Jr., J. Appeal from a judgment of the County Court of Otsego County (Mogavero, Jr., J.), rendered March 28, 1988, upon a verdict convicting defendant of the crime of criminally negligent homicide.

As a result of a fatal, two-car collision, defendant was indicted for two counts of vehicular manslaughter in the second degree, criminally negligent homicide and operating a vehicle while under the influence of alcohol in violation of Vehicle and Traffic Law § 1192 (2) and (3). The evidence at trial unequivocally established defendant had been drinking immediately prior to the accident. Additionally, the People presented evidence from which the jury could have concluded that at approximately 6:30 to 7:00 A.M. on June 4, 1987, defendant failed to stop at a stop sign, drove his pickup truck into an intersection at a high rate of speed and collided with a Volkswagen motor vehicle; the 27-year-old driver of the Volkswagen died as a result of injuries sustained in the accident.

In contrast, defendant relied on the testimony of his passenger and friend, John Nutter, who testified that defendant did indeed stop at the intersection, proceeded into it at roughly 5 to 10 miles per hour and was then struck by decedent's vehicle, which was traveling in excess of 90 miles per hour. The jury found defendant guilty of criminally negligent homicide, acquitted him of both violations of the Vehicle and Traffic Law, and never reached the vehicular manslaughter

charges; defendant was then sentenced to 1⅓ to 4 years in prison, the maximum permitted by law. Defendant, claiming that numerous errors occurred during the trial, that the verdict was not supported by the evidence, and that the sentence was harsh and excessive, brought this appeal. We affirm.

Defendant's contention, that County Court's 10-minute limitation, to which defense counsel objected, on each attorney's voir dire of prospective jurors was error, is unpersuasive. So long as counsel has a fair opportunity to ask potential jurors relevant and material questions, time limitations are a legitimate mechanism for preventing repetitious and irrelevant questioning (see, People v Garrow, 151 AD2d 877). Nothing in the record indicates that defendant was prevented from exploring any line of inquiry he sought to pursue, or that the jurors chosen were other than impartial (see, People v Pepper, 59 NY2d 353, 359). Furthermore, County Court, as apparently is its custom, examined the prospective jurors preliminarily regarding general matters, including specifically whether any jurors knew the witnesses. Although there is no transcript to review to ensure that County Court's preliminary examination was sufficiently extensive, significantly, defendant does not maintain that any challenge in fact was made to the adequacy of the court's examination or that he requested and the court refused to record the voir dire (see, People v Johnson, 140 AD2d 954, lv denied 72 NY2d 920). Accordingly, there is no reason to assume the court's examination was less than satisfactory.

The evidence justifies the verdict. To convict defendant of criminally negligent homicide, the jury was required to determine that he failed to "perceive a substantial risk and that such failure constituted a gross deviation from the standard of care that a reasonable person would observe in the situation" (People v Hess, 140 AD2d 895, 896, lv denied 72 NY2d 957). Viewing the record most favorably to the People, as we must, suggests that: defendant's view of the intersecting road was somewhat obstructed because of the heavy foliage lining it; the misty rain and morning hour dimness further limited his visibility; he had been drinking alcohol over a period of several hours just prior to the accident; defendant failed to stop at the stop sign and entered the intersection at a relatively high rate of speed, causing the death of the other motorist; and an investigating officer at the crash scene noted that defendant's eyes were bloodshot and watery, and his speech somewhat slurred. The jury could reasonably have

credited this, the People's version of the occurrence, and rejected the defendant's exculpatory explanation *(see, People v La Joy,* 109 AD2d 916, 917). Thus, the verdict was not only supported by sufficient evidence, but also, we believe, by the weight of the evidence *(see, People v Bleakley,* 69 NY2d 490, 495).

Any alleged evidentiary errors at trial were, at worst, harmless. State Trooper Robert Starr's testimony regarding Nutter's physical condition, essentially that he appeared intoxicated, immediately following the accident was not prejudicial in view of Nutter's uncontroverted admission that both he and defendant had indeed been drinking before the accident. Similarly, whether County Court impermissibly permitted the People's forensic pathologist to respond to a hypothetical question concerning what defendant's blood alcohol reading, registered at .05% some four hours after the accident, would have been at the time of the occurrence is immaterial given that defendant was acquitted of operating the pickup while under the influence of alcohol.

Nor did County Court err in admitting the testimony of the People's accident reconstruction expert, James Buchholz, regarding the estimated preimpact and postimpact speeds of the two vehicles *(see, People v Battease,* 124 AD2d 807, 809). The record discloses that Buchholz received six weeks of specialized training in accident reconstruction, and later attended a two-week refresher course. Additionally, he gained practical experience in the field which included his having responded as a State Trooper to over 1,000 accidents, and having reconstructed between 75 and 100 collisions. Moreover, he observed experiments the Federal Government performed to determine the crashworthiness of various vehicles. The formulas he used to compute both drivers' estimated speeds were learned during specialized training courses. Because Buchholz's testimony was based on facts in the record or personally known to him *(see, People v Battease, supra),* or are of a kind reasonably relied upon by those in this field *(see, Hambsch v New York City Tr. Auth.,* 63 NY2d 723, 726), County Court properly admitted his testimony.

Defendant's contrary argument notwithstanding, Buchholz's testimony that he found no evidence that the truck stopped was admissible negative evidence *(see, Latourelle v New York Cent. R. R. Co.,* 301 NY 103, 108). And the fact that he did not visit the scene of the accident until seven weeks after it occurred, and therefore might not have discovered any such existing evidence in the ordinary course of his investigation,

merely goes to the weight to be accorded to his testimony, not its admissibility *(see, People v Hess,* 140 AD2d 895, 897, *supra).*

Nor do we believe that County Court confused the jury when it presented the counts in its charge in an order different from that in which they appear in the indictment. The new order helped ensure that the jury would give its attention first to whether defendant was guilty of criminally negligent homicide and one of the counts of operating a motor vehicle while under the influence of alcohol before even undertaking to consider if defendant was guilty of vehicular manslaughter. It is difficult to view the presentation order as causing defendant prejudice in light of the fact that he was found guilty only of the criminally negligent homicide charge.

Defendant contends that his sentence, the maximum authorized by law, was harsh and excessive in view of his prior lack of criminal history, good work record, age (he was 22 at the time of the accident), and favorable comments from neighbors and friends. We note that, unlike those instances where we found such a sentence to be harsh and excessive *(see, People v Whiting,* 89 AD2d 694; *see also, People v Jensen,* 111 AD2d 986), here, defendant not only initially deliberately contrived to conceal that he was the driver of the pickup truck, urging instead that a fictitious hitchhiker named Mike was allegedly driving, but also has manifested no remorse for the tragic consequences of his conduct. We perceive no reason to substitute our determination for that of County Court.

Defendant's remaining contentions relate either to harmless error, are unsupported by the record or lacking in merit.

Judgment affirmed. Mahoney, P. J., Weiss, Mikoll, Yesawich, Jr., and Levine, JJ., concur.